**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ARRIS T. WILLIAMS,**

        **Plaintiff,**

**v.**                                      **Case No.  8:13-cv-2013-T-23TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

      Plaintiff applied for disability benefits and Supplemental Security Income in August 2007, alleging disability as of March 1, 2007, by reason of his mental condition.  Plaintiff's applications were denied originally and on reconsideration.

      Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") on November 16, 2009.  Plaintiff was represented at the hearing by counsel and testified in his own behalf.  Plaintiff was twenty-eight (28) years of age at the

time of his administrative hearing in November 2009.  He stands 5' 9" tall and weighed 207

pounds.  Plaintiff has a tenth grade education.  Plaintiff reported a number of past jobs

including work at a tire store changing tires, work as a mechanic, work in telemarketing, work

as a roof laborer, and as a day laborer.  By his account, he has suffered bipolar disorder his

whole life.  He had a number of jobs in 2006 and 2007 and tried other jobs in 2008 and 2009,

but the jobs did not last long because of his mental state.  He has not worked since April

2009.  He took training in massage therapy but did not finish the course because of his

depression and hallucinations.  He claims that he has auditory and visual hallucinations.  He

is prescribed Geodon for these conditions but they haven't yet found the right dosage.  He still

has the hallucinations which make him overly aggressive and, at times, to the point of being

violent.  The side effects of too much Geodon are that he cannot get up or function.  He lost

his insurance coverage and has a hard time filling prescriptions.  He was also prescribed

Wellbutrin.  He gets depressed and has anxiety.  He cries a lot.  He also suffers panic attacks

that cause racing thoughts, pounding heart, and difficulty breathing.  They occur almost every

day, two or three times a day and last for fifteen to forty-five minutes.

He lies down about two times a day for twenty minutes when he needs to.  He has

difficulty sleeping.  His appetite and energy levels fluctuate.  He has constant problems with

focusing and concentration.  He feels hopeless and worthless.  He usually does not want to be

around people.  He does not socialize.  He has no hobbies.  He can drive but with difficulty.

It is his mental condition, not his physical condition, that is keeping him out of work.  (R. 43-

65).

2

William Harvey, a vocational expert ("VE"), testified on a hypothetical assuming a person of Plaintiff's age, education, and work experience capable of work at all exertional levels but with limitations for performing simple routine tasks in a low-stress environment, with only occasional contact with coworkers and supervisors and no contact with the general public.  Assuming such limitations, the person could perform the jobs of horticultural worker, hand packager, and farm worker.  If Plaintiff's testimony about panic attacks and the need for unscheduled rest breaks twice a day were credited, there would be no jobs available.  (R. 65-70).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed herein as necessary.

By his decision of April 29, 2010, the ALJ determined that while Plaintiff suffers obesity and has severe mental impairment variously diagnosed as bipolar disorder, bipolar disorder with psychosis, depression, obsessive compulsive disorder, mood disorder, cannabis abuse, and personality disorder (borderline and anti-social traits), he nonetheless had the residual functional capacity to perform a restricted range of medium exertional work.  Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 26-35).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months" 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of

the Act, is one that "results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." *Id.* at § 423(d)(3).

   A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  *See*

*id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th

Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and

demonstrate that she has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions. *Moore*

*v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

   It is, moreover, the function of the Commissioner and not the courts to resolve

conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

The Plaintiff raises eight claims on this appeal. As stated by the Plaintiff, a remand and reversal is demanded with an immediate award of benefits because of the ALJ's: (1) non-recognition of all impairments and their proper effects; (2) the misunderstanding and non-application of proper standards; (3) use of an incomplete hypothet (sic); (4) the failure to state the weight of all medical opinions; (5) failing to award benefits upon proper weighing of evidence; (6) failure to find Plaintiff met or equaled the listing at 12.04; (7) inconsistent findings; and (8) failure to utilize the Eleventh Circuit pain standard. (Doc. 14).

In response, the Commissioner refutes each contention noting that the ALJ: properly considered Plaintiff's impairments, including his obesity and the purported side effects of his Geodon; properly concluded that he did not meet or equal a listed impairment; properly weighed the opinion evidence and properly assessed Plaintiff's residual functional capacity (RFC) after review of the whole record; properly assessed Plaintiff's credibility under the Circuit's "pain standard;"and properly posed complete hypothetical questions to the VE. Accordingly, the Commissioner argues there is no cause for remand in this case. (Doc. 15).

After careful consideration of the decision in light of the medical evidence, I conclude there is no cause for remand in this case. While Plaintiff suffers from a mental condition, which, as noted by the ALJ, has been variously described by treatment providers, and the condition at times has caused Plaintiff considerable distress, the medical and other evidence supports the finding that treatment helped and that the ALJ's finding of an RFC for simple routine tasks in a low stress environment where there is only occasional interaction with coworkers and no contact with the general public is supported by substantial evidence.

Addressing the first claim, Plaintiff complains that the ALJ did not address all his impairments, failing to address the side effects of Geodon, his obesity, and his claim of fatigue. By this argument, somnolence caused by Geodon and fatigue are nonexertional impairments which went unmentioned by the ALJ. And, while the ALJ credited Plaintiff with obesity, he made no express findings of the import of that condition on his mental health. However, as the Commissioner points out, the ALJ properly addressed and discounted Plaintiff's subjective claims and a review of the medical record reveals it does not support the claim that his medication caused him to be unable to get out of bed or that he suffered severe fatigue.

An ALJ has a basic duty to fully develop the record, even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). Accordingly, in this Circuit, "an ALJ has a duty to investigate the possible side effects of medications taken by a claimant," because "[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contributed to a disability." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (directing consideration of the side

effects of medication).  On the other hand, the Eleventh Circuit also has held that when there is no evidence that a claimant is taking medications which cause side effects, an ALJ is not required to elicit testimony or make findings regarding the effect of medications on the claimant.  *See Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992).  In *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. Appx. 901, 904 (11th Cir. 2011), the Court held that the ALJ did not err in failing to make findings regarding the side effects of medication because there was no evidence Burgin was experiencing side effects.  I think that the record here supports a similar conclusion.

While it is undoubtedly correct that Plaintiff and this Court would have been better served by the ALJ expressly addressing Plaintiff's testimony concerning his use of Geodon, a review of the medical record reveals no support for the claim that Plaintiff had ongoing problems with either Geodon or Wellbutrin.  Moreover, while he claims to have testified about fatigue (at R. 47 and 51), I find no such express testimony, apart from testimony that he lies down daily.  In any event, there is no medical support that these claimed impairments are as debilitating as claimed.  In particular, the medical record does not support the subjective claims that the medication rendered him unable to get out of bed.  On the contrary, the medical record supports a conclusion that the Geodon helped Plaintiff's mental condition.  Thus, any error in not expressly addressing the overall positive affects of the medication is harmless.  As for obesity, it was expressly addressed, and Plaintiff demonstrates no error in the ALJ's consideration of that condition.

As the record reflects, apart from his self-report, there is no medical support for his claim that Geodon or any other medication caused him to be unable to get out of bed.  Thus,

7

while Plaintiff is correct that on one occasion in June 2008, he did report problems from

taking Geodon to the nurse at Suncoast Center for Community Mental Health, Inc.

("Suncoast"), he fails to set forth the whole of that report or the fact that he often advised his

providers that Geodon was helping with his mental condition.  For example, during his

August 13, 2008, visit, Plaintiff reported that he had a positive response from Geodon in the

past.  When he started the medication at 80mg "his mind was able to slow down" and he was

able to concentrate "[a] little more."  (R. 274).  However, "at the dosing of 120mg," Plaintiff

reported "extreme daytime somnolence to the point of 'I couldn't get up and I lost my job.'"

(R. 274).  As a consequence of this report, his dosage prescribed for Geodon was decreased to

80mg.  *Id*.  Moreover, as noted by the Commissioner, Plaintiff had previously reported the

positive effect of this medication on his mental condition without any claim of extreme

daytime somnolence.  Likewise, in a later Suncoast note, he reported feeling positive with the

reduced dosage of Geodon.  (*See* R. 239, 240, 241, 264).[1]  Thus, I find no error in the ALJ's

alleged failure to find the side effects of Geodon or his alleged fatigue as separate severe

impairments.

   As for his alleged fatigue, Plaintiff claims to have testified about the same at the

hearing, but the cited record (R. 47 and 51) does not reveal any such express claim.  More

---

[1]As noted by the Commissioner, Plaintiff reported anger and mood issues when not taking Geodon (R. 240, 245, 263, 264, 273, 275, 291), but when he was taking the medicine, he reported no hallucinations and improved sleeping (R. 239, 241, 264, 277).

significantly, I have found not medical support for the claim in the treatment notes and Plaintiff fails to cite any medical evidence of the same.[2]

As for his obesity, the ALJ recognized the condition as a severe impairment, despite the fact that Plaintiff made no claim that his physical condition affected his ability to work. Indeed, at his hearing, Plaintiff made clear that physically he could do anything and the only thing preventing work was his mental condition. (R. 65). Plaintiff nonetheless complains that the ALJ did not elaborate on how the obesity would affect Plaintiff's functioning so that a determination could be made as to whether he met or equaled the mental disorders listing at 12.04.[3]

Here, by the ALJ's assessment, Plaintiff's obesity limited Plaintiff to no more than medium exertional work. (R. 32). As such related to the evaluation of the listings, the ALJ addressed the listings at 12.04 and 12.08 and found Plaintiff's combined impairments neither met nor equaled either listing. (R. 30). This evaluation was made with express reference to SSR 02-1p. Thus, the ALJ stated:

> The claimant does not meet the equivalent of a listing per SSR 02-lp. His obesity alone does not medically equal a listed impairment, nor does his obesity considered with his other

---

[2]The Court's Scheduling Order provides that the Plaintiff must identify with particularity the discrete grounds upon which the decision is challenged and any such challenges "must be supported by specific citation to the pages of the record relied upon when discussing the pertinent facts, medical evidence, and opinion evidence and by citation to governing legal authority that supports each challenge." (Doc. 11).

[3]Plaintiff cites SSR 02-1p. That ruling is the Administration's policy statement which, among other considerations, cautions adjudicators to consider the effects obesity can have on other impairments. Though he made no claim of such, Plaintiff now urges the ALJ does not indicate, except in conclusory fashion, what effects the obesity has on his mental impairment and whether it caused Plaintiff to meet or equal the listing at 12.04. (Doc. 14 at 2).

> impairments reach listing-level severity as required by SSR 02-1p.
> While the evidence of record shows that the claimant's obesity has
> increased the severity of his functional limitations, his limitations
> still do not reach the heightened level of severity required to meet
> or equal a listing.

*Id.*

He further noted that Plaintiff failed to meet or medically equal either listing because the impairments caused only moderate limitations in social functioning and concentration, persistence, or pace and Plaintiff did not have a history of repeated episodes of deterioration as such is defined by the Act. (R. 30-31). By my reading, the ALJ addressed the Plaintiff's obesity in combination with other impairments and in accordance with the applicable ruling and articulated adequate reasons for the conclusion that Plaintiff failed to demonstrate that his condition met or equaled a listed impairment. Significantly, Plaintiff fails to support his argument by demonstrating from the medical record any evidence that his obesity so enhanced his limitations that he was presumptively disabled under the mental disorder listing.

By his fourth and fifth claims, Plaintiff argues that the ALJ failed to state the weight given to the medical opinions given at treating facilities Suncoast, PEMHS, and Windmoor and to give proper weight to the opinions of Dr. Steven O'Neal and Dr. Karl Jones. Regarding the treatment facilities, without identifying any particular medical opinion, Plaintiff cites generally to Suncoast records (R. 261-289), PEMHS records (R. 291) and Windmoor records (R. 319) and urges that the ALJ failed to state the weight given this medical record. As for the consulting doctors, Plaintiff complains that the ALJ erred by giving "some weight" to the opinion of Dr. O'Neal and giving no significant weight to the opinions of Dr. Jones. Within

10

this argument, Plaintiff also claims the ALJ failed to state the weight given various GAF scores listed in the records.

In this Circuit, certain rules apply to the consideration of the medical opinions of treating, examining, and nonexamining doctors.  "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel* at 1179.

When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Id.* at 1178 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The opinion of an examining doctor typically is entitled to more weight than the opinion of a nonexamining doctor.  20 C.F.R. § 404.1527(d)(1); *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985).  The reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative decision.  *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987)).  However, an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources.  *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

Here, Plaintiff fails to identify any medical opinions in the treatment notes from Suncoast, PEMHS, or Windmoor, which were unaccounted for by the ALJ.  By my review of the cited portions of theses records, they were fairly assessed by the ALJ and generally credited in terms of the various diagnoses given to Plaintiff's mental condition.  There are medical opinions reflected in the Windmoor records, but such do not support Plaintiff's argument.  Indeed, Dr. Corzo's opinions offer substantial support to the ALJ's assessment of Plaintiff's overall mental functioning.  And, as the Commissioner argues, the decision reflects the ALJ's review of these records and the fact that the ALJ relied upon the same for his conclusion concerning Plaintiff's RFC and his credibility.[4]

As for the ALJ's treatment of the opinions from consulting examiners – Drs. O'Neal and Jones – the record reflects the Plaintiff was seen by psychiatrist Karl D. Jones, M.D., in November 2009 (R. 304-10) and by psychologist Steven E. O'Neal in February 2010 (R. 312-18).  By Dr. Jones' assessment, Plaintiff suffered bipolar disorder with psychosis and

_____

[4]As set forth above, medical opinions in this context are statements from physicians. . . that reflect judgments about the nature and severity of a claimant's impairments.  A review of these treatment notes reflects that the evaluation and care at Suncoast and PEMHS were provided by social workers and/or registered nurse practitioners and not by physicians. Indeed, I find no opinions by physicians in these records.  In any event, a fair reading of the decision reflects the ALJ's consideration of the records and general acceptance of the findings and diagnoses.
    Plaintiff was admitted to Windmoor for a short period of time in May 2008 under the Baker Act and was evaluated by Dr. Hector Corzo, M.D.  This admission under the Baker Act was recognized by the ALJ.  (R. 29).  This doctor did perform a psychiatric evaluation on mental status that found Plaintiff's appearance appropriate, his behavior/attitude cooperative, his orientation and level of alertness X4, his mood/affect dejected, his thought processes goal directed and coherent, his memory intact, with fair insight, judgment, and impulse control. He possessed average intelligence and he denied audio or visual hallucinations.  (R. 321, 324).

borderline personality disorder, had marked limitations in daily activities, social functioning, concentration, and adaptation, a GAF of 55, and was totally disabled.  (R. 304-07).  By Dr. O'Neal's assessment, Plaintiff's test scores presented a questionable profile and possible malingering or exaggeration.  He was diagnosed with mood disorder NOS and personality disorder NOS (borderline and anti-social traits noted), and problems related to vocational and social environment, with a GAF of 65.  He found Plaintiff with moderate limitations in his ability to interact appropriately with the public, co-workers, and supervisors.  (R. 312-18).  Both doctors' findings were acknowledged by the ALJ, as were the records reflecting GAF scores ranging from 35 to 65.  (R. 29).  In weighing these opinions the ALJ gave some weight to the opinion of moderate limitations given by Dr. O'Neal but he declined to give significant weight to the opinions of marked limitations given by Dr. Jones.  (R. 32).  In discounting Dr. Jones' opinions, the ALJ stated that he found the opinion less persuasive because they were extreme in nature and went beyond the limitations claimed by Plaintiff at the hearing; the doctor had only one contact with Plaintiff; and the doctor apparently relied heavily upon the Plaintiff's subjective report and uncritically accepted as true what Plaintiff was reporting despite the fact that there was good reason to question Plaintiff's subjective claims.  Moreover, the opinion that Plaintiff was disabled is not a medical opinion and one left to the Commissioner to make.  (R. 33).

I find no cause for remand in the ALJ's handling of these doctors' opinions.  First, as one-time examiners, there opinions were not entitled to any particular deference.  While Plaintiff complains that "some weight" is too vague, I think the assessment has to be read in the light of the ALJ's consideration of the whole record, the fact that this doctor was a one-

time examiner, and the fact that the ALJ believed Plaintiff was somewhat more limited than as assessed by the doctor.  Thus, the ALJ ultimately credited the doctor's limitations for interacting with co-workers and supervisors, but found the Plaintiff was more limited in interacting with the public than indicated by the doctor.  As for Dr. Jones, the whole of the record in this case did not support the doctor's across-the-board marked limitations in functioning.  Indeed, other evidence suggested that Plaintiff did not suffer any real limitations in his daily activities.  For instance, in contrast to what Plaintiff told Dr. Jones, he reported to Dr. O'Neal that his typical day's activities included walking the dog, fixing meals, household chores, and doing remodeling side work.  The rejection of marked limitations in social functioning and concentration and adaption is necessarily read in light of the ALJ's conclusions and reasoning why Plaintiff suffered only moderate limitations in these areas. (*See* R. 30).  In short, other record evidence suggested that Plaintiff was capable of acting appropriately in social settings and had adequate intelligence, memory, and cognitive function to concentrate and adapt to the level assessed by the ALJ.  Moreover, by the ALJ's assessment, there was good cause to discount Plaintiff's subjective claims as simply too extreme in light of the medical evidence.  Those same concerns were applied to Dr. Jones' consideration, which on the face of the report suggest that the doctor relied heavily upon Plaintiff's self-report.[5]

---

[5]It appears that the only medical record reviewed by Dr. Jones was from Plaintiff's admission at Windmoor.  When the medical record is viewed as a whole, the admission at Windmoor reflects a brief low point for Plaintiff in this record and does not reveal a longitudinal view of Plaintiff's care.

Finally, the ALJ more than adequately addressed the range of GAF scores and explained why such are not controlling.  Global Assessment of Functioning ("GAF") is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS  at 32 (4th ed. 1994) (DSM-IV). [6]

A low GAF score, however, does not require a finding of disability.  *Wind v. Barnhart*, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005) (recognizing that the Commissioner has declined to endorse the use of GAF scores in disability determinations.); *Seymore v. Apfel*, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work"); *accord Cox v. Apfel*, No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000).  Nor does a low GAF score translate into specific mental functional limitations or

---

[6]A GAF of 61-70 indicates that either some mild depressive symptoms are present or that difficulty in social or occupational functioning exists, a GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers), and a GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*  A GAF of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.*

constitute an assessment of a claimant's ability to work.  *See Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008).

Here, such was noted by the ALJ who observed that the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicted that GAF scores have no "direct correction to the severity requirements of the mental disorders listings."[7]  (R. 29).  In these circumstances, I find no error in the ALJ's failure to otherwise state the weight afforded to the various GAF scores reflected in this record.  Given that the ALJ fairly reviewed the mental health record from which the GAF scores derived, it is no error requiring remand that the ALJ did not expressly indicate the weight given any of the GAF scores.  In sum, the Plaintiff demonstrates no good cause for a remand on these claims.

By his sixth claim, Plaintiff argues that on the basis of Dr. Jones' opinion and the record from Suncoast, the ALJ should have concluded Plaintiff was disabled under listing 12.04.  However, because I have concluded that the ALJ properly discounted the opinion

---

[7]It is worth noting that the American Psychiatric Association did not include the GAF scale in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM).  *See* DSM-5 at 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

evidence from Dr. Jones, and there is no other medical evidence to reveal Plaintiff meets or equals the requirements of that listing, this claim is without merit.

Listing 12.04 addresses affective disorders characterized by disturbance of mood accompanied by a full or partial manic or depressive syndrome.  The Listing sets forth a number of medical findings which must exist in order to meet or equal the listing  Despite having the burden to do so, Plaintiff fails to demonstrate from this record that he satisfies these requirements.[8]  While Dr. Jones' opinion finding marked limitations would appear to satisfy certain of the category B requirements of this listing, the opinion was discounted by the ALJ who found no more than moderate limitations in social functioning and maintaining concentration, no limitation in activities of daily living and no more than one or two periods of decompensation.  In short, Plaintiff fails to meet his burden on this issue.

---

[8]The Listing of Impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity. *See*  20 C.F.R. Pt. 404, Subpt. P, App. 1.  By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience.  In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing.  Where the plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency.  *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).  Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)

As for the ALJ's credibility finding, Plaintiff, in his eighth claim, acknowledges that such was rendered in accordance with the applicable standard but he urges that his subjective testimony was not properly refuted.  However, when the whole of the decision is read, this claim is without merit.[9]

Here, the decision reflects that the ALJ partially credited Plaintiff's subjective testimony but not to the extent claimed.  In addressing his conclusion, he spoke to the testimony that he did credit and then gave reasons for discounting the balance of Plaintiff's alleged symptoms.  As stated by the ALJ:

> The undersigned finds the claimant's allegations only partially credible in regard to the severity of his alleged symptoms, and believes the above residual functional capacity properly takes the allegations supported by the record into account. The claimant has made allegations of trouble with concentration, feelings of worthlessness and hopelessness, anxiety, panic attacks, and loss of motivation and the undersigned has accordingly limited him to work involving simple routine tasks in a low stress environment. Additionally, the claimant made complaints of problems with social functioning and aggressiveness and for that reason the undersigned has limited him to work involving only occasional interaction with coworkers and supervisors and no contact with the general public.
>
> . . .
>
> The undersigned finds the claimant only partially credible for several reasons. First, the record reveals that the claimant failed to follow-up on recommendations

---

[9]I fully recognize the *McCloud* opinion cited by Plaintiff but I find the circumstances here different from those addressed by the court in *McCloud.*  First, the ALJ did not misrepresent or misread any GAF score and more importantly, apart from the 35 GAF assessed when Plaintiff was involuntarily admitted at Windmoor, the GAF assessments by Drs. O'Neal and Jones, 65 and 55, respectively, suggest only mild to moderate limitations which are entirely consistent with the ALJ's review of the medical record, his RFC assessment, and his credibility finding.

made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal The claimant was removed from treatment facilities twice since the alleged onset date for failure to keep scheduled appointments for over 90 days (Exhibit 4F and 7F). Also in that regard, there is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application (Exhibit 7F). Finally, as mentioned earlier, the record appears to ret1ect work activity after the alleged onset date. Although the claimant's work activity may not have constituted disqualifying substantial gainful activity at all times since his alleged onset date, the work activity evidences a fairly active lifestyle, an ability to follow a set schedule, travel to and from work, communicate with others, and complete tasks (Exhibit 11E and Claimant's Hearing Testimony).

(R. 32, 33).

While Plaintiff argues with the initial conclusions that accepted his testimony as partially credible and indicated the ALJ's accommodation of the subjective complaints, he fails to address the whole of his medical record and the reasons set forth in the second conclusion as to why the whole of his subjective claims was not credible.  By my consideration, there is nothing improper with the ALJ's statement on the functional import of his conclusion that Plaintiff was partially credible.  Moreover, this record may be read to reveal that when Plaintiff was compliant with treatment, his symptoms, such as the alleged hallucinations and high anxiety, were much improved.  While he claimed no insurance, the record otherwise revealed the availability of the needed medications and care when Plaintiff sought treatment.  Moreover, the credibility finding is necessarily read in the light of the ALJ's review of this record, which simply is inconsistent with some of Plaintiff's claimed

symptoms.  Thus, because the assessment is supported by substantial evidence, I find that Plaintiff is not entitled to relief on this claim.

The above conclusions lead to the further conclusion that the ALJ's RFC assessment is supported by substantial evidence.[10]  Plaintiff complains in his second claim that it is incomprehensible that the ALJ could assess his RFC without even mentioning SSR 96-8p. This ruling sets forth the Administration policies for the assessment of RFCs.  It defines RFC as an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  "'Regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*  Plaintiff urges

---

[10]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440.  At this stage of the evaluation process, the burden is on the claimant to show that he/she can no longer perform her past relevant work.  *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986).  In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The final responsibility for deciding a claimant's RFC is with the ALJ.  20 C.F.R. §§ 404.1527(d), 416.927(d).

that given the difficulty he has had regulating Geodon, it would be difficult, if not impossible, for him to work on a regular and continuing basis.[11]

      First, the decision reflects that the ALJ did recognize SSR 96-8p in relation to his consideration of the Plaintiff's RFC for work on a sustained basis.  (R. 27).  Moreover, as set forth above, the medical record reveals that by his own account, Plaintiff did well when taking a lower dosage of Geodon.  Apart from his claim, there is no record evidence of difficulty regulating this drug.  Rather, the evidence shows that Plaintiff declined to remain compliant with its usage.  Secondly, under the standard, the final responsibility for deciding a claimant's RFC is with the ALJ.  20 C.F.R. §§ 404.1527(d), 416.927(d). The question on appeal is whether the factual determination is supported by substantial evidence.  This is a relatively low standard and I am obliged to conclude that this RFC assessment is so supported if Plaintiff chooses to remain compliant with his medication regimen.  Finally, apart from counsel's urging, Plaintiff offers nothing from the record which undermines the ALJ's conclusion on his functional capacity.

_____

[11]Plaintiff also criticizes the ALJ's statement that he relied upon objective medical evidence and the opinions of Dr. O'Neal in reaching his RFC assessment (R. 32) and his conclusion that the RFC is supported by the objective medical evidence, the opinion of Dr. O'Neal, and the credibility of Plaintiff (R. 33).  When the decision is fairly read, there is nothing improper in these comments.  In addition to Plaintiff's subjective complaints, there were clinical findings and clinical test results which were considered by the ALJ in this decision and found more reliable.  Contrary to this argument, the comment does not reflect that the ALJ demanded objective proof on the claimed symptoms or Plaintiff's mental impairments.

By his third claim, Plaintiff argues that the ALJ employed an incomplete hypothet (sic) with the VE because despite the ALJ's conclusion that he suffered moderate limitations in concentration, the question included only a limitation for simple routine tasks which does not adequately account for a moderate limitation.  As a consequence of the incomplete hypothetical, the VE's testimony does not provide the substantial evidence to support the ALJ's vocational conclusion.  He cites *Winschel v. Commissioner of Social Security*, urging that as a matter of law simple routine tasks do not qualify as a substitute for the impairment in concentration.  631 F.3d at 1180-81.

In response, the Commissioner argues that the ALJ properly accounted for Plaintiff's moderate limitation in maintaining concentration, persistence, or pace and determined that Plaintiff could still perform other work and thus was not disabled.  Under *Winschel*, the ALJ need not explicitly refer to a claimant's moderate difficulties in maintaining concentration, persistence, or pace in the hypothetical questions to the VE if the ALJ indicates that the medical evidence supports that the claimant can perform other work despite such limitation or the ALJ otherwise implicitly accounts for the limitation in the hypothetical question.  Here, the ALJ assessed an RFC allowing for work despite the Plaintiff's moderate limitations and such limitations were properly presented to the VE.

When employing a vocational expert, the ALJ must pose hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.

22

2002) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).  Where the hypothetical

question posed to a VE does not comprehensively describe all of the claimant's impairments

and limitations, the decision of the ALJ, based significantly on the VE's testimony, is

unsupported by substantial evidence.  *Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir.

1985) (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).  However, an ALJ need

not include findings in the hypothetical that the ALJ has properly discounted or rejected as

unsupported.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

  In *Winschel*, the court determined that a hypothetical question to a VE must account

for mental limitations identified during the Psychiatric Review Technique ("PRT").

Moreover, it reversed the Commissioner's decision because the ALJ asked the VE a

hypothetical question that failed to include or otherwise implicitly account for Winschel's

moderate limitation in maintaining concentration or pace as identified in the PRT form.  In

such circumstances, the VE's testimony was not substantial evidence to support the ALJ's

vocational conclusion and a remand was ordered with instructions that the ALJ pose a

hypothetical question that specifically accounted for Winschel's moderate limitation in

maintaining concentration, persistence, or pace.

  In a number of subsequent cases, the Eleventh Circuit has revisited the issue.  In

*Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x. 869 (11th Cir. 2011), it held that the ALJ's

hypothetical question to the VE adequately accounted for the claimant's impairment in

concentration, persistence, or pace, by asking the VE to assume a person of the claimant's

23

age, education, and work experience who could only "understand, remember, [and] carry-out simple . . . tasks and concentrate for brief periods of time.'"  422 Fed. App'x at 871-72 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009)).  Moreover, the court stated that "an ALJ's hypothetical question restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence or pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite the concentration deficiencies.  *Id.*  In *Syed v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 632 (11th Cir. 2011), the court similarly held that although the hypothetical question to the VE did not expressly include his mental impairments, it implicitly accounted for the same and thus was satisfactory.  Thus, despite his moderate limitations, the medical record demonstrated that Syed could engage in simple, routine tasks and unskilled work.  "Because simple, unskilled work sufficiently accounted for limitations in concentration, persistence, and pace, the hypothetical posed adequately accounted for Syed's limitations as they were implicitly included."  *Id.* at 635 (citing *Winschel*).  In *Forrester v Comm'r of Soc. Sec.*, 455 Fed. Appx. 899, 903 (11th Cir. 2012), the court stated that while an ALJ does not generally account for a claimant's limitations in concentration, persistence, or pace by restricting the hypothetical question to simple, routine tasks or unskilled work, when the medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, or pace . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.  *Id.* at 903 (citing *Winschel*).

Here, the ALJ completed the PRT form and concluded that Plaintiff had moderate limitations in concentration, persistence, or pace.  Nonetheless, he concluded Plaintiff had the RFC for medium exertional work involving the performance of simple routine tasks in a low stress environment where there would be only occasional interaction with coworkers and supervisors and no contact with the general public.  (R. 31).  He explained that based on Plaintiff's allegations of problems with concentration, he was limited to work involving simple routine tasks in a low stress environment.  (R. 32).  This and similar limitations suggested by the PRT were incorporated by the ALJ in his hypothetical to the VE.  Despite the limitations, the VE identified other work Plaintiff could perform.  By my consideration, because the ALJ implicitly, if not expressly, accounted for Plaintiff's moderate limitation in concentration, persistence, or pace in his hypothetical to the VE and otherwise found that Plaintiff was capable of work despite his moderate mental limitations, the hypothetical was adequate, and the VE's testimony thus provides the necessary substantial evidence to support the ALJ's vocational conclusion.

Finally, Plaintiff argues that inconsistencies in the decision require a remand.  I have otherwise addressed these inconsistencies and find this argument unsupported and redundant.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
2nd day of December 2014.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record

26